Filed 5/29/15  In re A.S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | B260708 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>N.M.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK57998) |

APPEAL from orders of the Superior Court for the County of Los Angeles. Marguerite D. Downing, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

## SUMMARY

The mother in this dependency case appeals the juvenile court's orders denying her petition under Welfare and Institutions Code section 388[1] and terminating parental rights to her son, A.S.  We affirm the orders.

## FACTS

A.S., who is now three years old, was detained by the Los Angeles County Department of Children and Family Services (Department) on April 3, 2012, shortly after he was born.  His mother, who now has six children, has a long history of substance abuse and a long history with the Department.  She failed to reunify with four of her older children, who are under legal guardianship.

On August 31, 2012, the juvenile court found A.S. to be a dependent child of the court, sustaining jurisdictional allegations under section 300, subdivisions (b) and (j). The court found mother had a history of illicit drug abuse, was a current user of methamphetamine, and used illicit drugs during her pregnancy with A.S.  Other sustained allegations were that the four older siblings were receiving permanent services due to mother's drug abuse, mother and father had a history of domestic violence, and A.S.'s father physically abused A.S.'s older siblings and mother failed to take action to protect the siblings.

A.S. was placed with his maternal uncle and the uncle's wife soon after he was born, and has remained with them throughout the dependency proceedings.  They are now his prospective adoptive parents.

The dispositional hearing was not held until July 9, 2013.  (Meanwhile, mother had relapsed, testing positive for methamphetamine on February 11, 2013, and failing to appear for tests in March and April 2013.)  At that time, the court found it was in A.S.'s best interest to set a hearing to select a permanent plan (§ 366.26), and ordered no reunification services, based on mother's failure to reunify with A.S.'s half siblings after their removal (§ 361.5, subd. (b)(10)).

---

[1]    All statutory references are to the Welfare and Institutions Code.

The juvenile court continued the permanent planning hearing several times to complete an adoptive home study for A.S.'s caregivers. The hearing was finally held on November 24, 2014.

In the interim, on June 20, 2014, mother filed a section 388 petition asking the court to change its July 9, 2013 dispositional order. Mother asked the court to return A.S. to her care, or to order reunification services and unmonitored visits for mother. Mother's petition stated she was enrolled in a drug program "where she receives parenting, counseling, substance abuse & 12-step meetings." Mother explained she was taking drug tests, had a sponsor, and in January 2014 gave birth to another child, A.Z., who was left in her care and was doing well. Mother's petition stated that a new order returning A.S. to her care or providing reunification services would be better for A.S. because "Mother is now drug free and addressing the issues that led to [A.S.'s] being removed from her. She is now raising the sibling [A.Z.]. She would like for these [two] brothers to be raised together by their mother in a safe [and] stable environment."

Along with her section 388 petition, mother submitted letters from the Los Angeles Centers for Alcohol and Drug Abuse (L.A. CADA), showing that she was admitted to the outpatient treatment program on March 5, 2014, and as of May 27, 2014, had attended many group meetings, parenting classes, alcohol and drug classes. Mother also attended individual sessions, and was "an active participant in self-help meetings . . . ." Her counselor stated mother was "demonstrating willingness and determination to address the issues that relate to [the Department's] case," was open and honest, and showed personal growth; it appeared to her treatment team that she "is on a road to recovery and healthy living."

On June 27, 2014, the juvenile court ordered a hearing on mother's section 388 petition, and set the hearing for August 11, 2014. That hearing was continued several times, and was finally held on November 24, 2014, in conjunction with the hearing on termination of mother's parental rights.

During the time between A.S.'s detention in April 2012 and the hearing in November 2014 – the entirety of which A.S. spent with his caregivers – mother's visits

3

with A.S. were sporadic. In a March 4, 2013 report, the Department stated mother and child were not bonded with one another, and "mother has been informed of her right to visit the child as frequent[ly] as possible or at least one time per week, and still mother has not made efforts to visit him consistently. The caregiver has reported the mother has visited the child [A.S.] on an average of 2 times per month, at times, only one time per month," and "the child seeks the caregivers rather than the mother." The caregiver reported that mother did not have visits with A.S. from March 2013 until September 2013. The Department's status review report dated July 11, 2014, stated that mother "has gone months without visiting [A.S.] in the most critical stage[s] of his life and development, striking any chance of a mother son bond for her and this child."

On June 3, 2014, shortly before mother filed her section 388 petition, mother's counsel requested the Department "to help set up a visitation schedule," and the court agreed. The Department set up a schedule for mother's visits in July, setting one visit per week at the Department's office for two hours, and visits on Sundays through the caregivers at a McDonald's restaurant. (The caregiver said that a visit on July 2, 2014, was "the first time mother had a visit with the minor for several months.") According to the social worker, mother missed about three visits at the office, and then stopped coming for those visits in the middle of August 2014. According to mother, in the six months prior to the November 24 hearing, she had "[m]aybe ten [visits] at the most," and "missed two visits because of my job." As for the first two years of A.S.'s life, mother said she was "in rehab for the first year of [A.S.'s] life," so had visits with A.S. "on the weekend for the first year, then after that, it was very rare."

The Department opposed mother's section 388 petition. In a "Last Minute Information for the Court" dated September 17, 2014, the Department stated that in the past four weeks, mother had missed seven scheduled visits with A.S. "To allow mother to reunify or engage in unmonitored contact with a child that doesn't know her and has remained suitably placed in a home with loving relatives his entire life, with minimal interaction with his mother would be detrimental to this child's development and to his emotional and physical stability." A similar filing on the date of the hearing stated that

4

the caregivers reported mother had not called to speak to A.S. or schedule a visit in more than two months.

At the hearing on mother's section 388 petition, mother testified, and offered as evidence the letter from L.A. CADA, as well as a Department report recommending termination of jurisdiction over mother's sixth child, A.Z.

Mother testified that her "sober date" was June 30 (or June 3), 2013; A.Z. was in her care; and she was on step four of a 12-step program. She did not have a current visitation schedule with A.S., and said she had not been having her visits at the Department's office for the past six months "[b]ecause it was not being enforced." She said that "[a] couple" of her missed visits were her fault "because of work," but others were because the caregivers were "unable to make visits." She last saw A.S. on November 1, 2014, at a nephew's birthday party "that they just happened to be there . . . ." At the beginning of November, she found out the caregivers had moved to Hysperia, and she "kind of gave up calling to set up visits because [A.S.] lives out there and I have no way of – my car is not that reliable to get all of the way to Hysperia." When questioned about why she did not contact the social worker to set up visits before July 2014, mother said that the dependency investigator told her "that [A.S.] was getting adopted. That I had no chance of ever getting him back." Mother said she was also told that she "had no rights to know about [her] child's medical appointment[s] . . . ." She testified that A.S. "is happy" during her visits, and appears to enjoy the visits "[w]hen it's just me and him . . . ."

Mother also testified that she had just finished her rehabilitation program at L.A. CADA in September 2014, and that it was her seventh program. She successfully completed three 12-step programs in the past (the first one in 2002 or 2003), but returned to using methamphetamine each time.

The social worker testified that A.S. was "very bonded to the caregivers," and "refer[s] to them as Mommy and Daddy."

A.S.'s counsel argued the court should grant mother's request for "more family reunification" and for unmonitored visits, asking "for [A.S.] to have the opportunity to be with his mother, to be part of that whole family working toward reunification."

The trial court denied mother's petition. The court found there was a change in circumstance with respect to mother's participation in programs, and that "even though she has fallen off the wagon," she "gets back on there," showing "a great deal of commitment . . . ." But, "[w]ith respect to best interest, I don't see it." The court explained: "This child has never resided in the home of his mother. The child will be three years old in March. He does not call her Mommy, other than when she says I am your mother. He has had one placement his entire life . . . . [I]f we were talking about the first year, it might be a different situation, but at this point [A.S.] is differently situated than his siblings. He has never resided with his siblings. He always resided with his aunt and uncle. . . . [¶] . . . [¶] In this case, there is no evidence that returning him or giving him to his mother is going to be in his best interest, because he's thriving where he is, and there are no issues that need to be adjusted."

After argument on termination of parental rights, the juvenile court found A.S. was adoptable, it would be detrimental to him to be returned to the physical custody of the parents, and no exception to adoption applied.

Mother filed a timely notice of appeal from the juvenile court's orders terminating parental rights and denying her section 388 petition.

## DISCUSSION

Under section 388, a juvenile court order may be changed or set aside if the petitioner establishes that new evidence or changed circumstances exist, and the proposed change would promote the child's best interests. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 ["At the hearing on the petition pursuant to section 388, the juvenile court's task was to determine whether the [petitioner] had demonstrated by a preponderance of the evidence that there was new evidence or a change of circumstances demonstrating that it was in [the child's] best interests that the previous . . . order . . . be changed, modified or set aside."].) After reunification services have been terminated, the parent's interest is no

6

longer paramount, and the focus has shifted " 'to the needs of the child for permanency and stability' . . . ." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*) ["in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child"].) The decision on whether to modify a previous order rests within the juvenile court's sound discretion, and will not be disturbed on appeal in the absence of a clear abuse of discretion. (*Id.* at p. 318.)

Mother contends the juvenile court abused its discretion in denying her section 388 petition, and she should be given a chance to reunify with A.S. We disagree.[2]

Certainly the progress mother has made since her last relapse in June 2013 constitutes a substantial change in her circumstances: she has been drug-free for a substantial period and her sixth child is in her care and doing well. That speaks volumes for mother's commitment, but it does not demonstrate that returning A.S. to her care, or providing services to help her reach that goal, would be in the best interests of A.S. (See *Stephanie M., supra,* 7 Cal.4th at p. 317 [" 'When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. That need will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child.' "].)

*In re J.C.* (2014) 226 Cal.App.4th 503 (*J.C.*) is particularly pertinent. There, the court concluded the mother's "long-term sobriety and renewed interest in parenting classes showed changed circumstances, but Mother did not establish that an order giving her custody of [the child] would be in the child's best interests." (*Id.* at p. 526.) In *J.C.*, the evidence showed the child "had a loving and stable placement with her maternal aunt . . . , who had cared for [the child] since her birth." (*Ibid.*) The child was two and one-half years old, and her aunt was "the only constant and stable parent [the child] had ever known," and the two "were strongly bonded to each other." (*Ibid.*) In *J.C.*, as here,

---

**2** Mother offers no argument challenging the juvenile court's subsequent order terminating parental rights.

the mother "failed to present any evidence [the child's] best interests in *permanency and stability* would be furthered by the proposed modification . . . ." (*Ibid.*; see also *In re Angel B.* (2002) 97 Cal.App.4th 454, 465 [summarily denying the mother's section 388 petition without a hearing; "there is a rebuttable presumption that, in the absence of continuing reunification services, stability in an existing placement is in the best interest of the child, particularly when such placement is leading to adoption by the long-term caretakers"; to rebut that presumption, "a parent must make some factual showing that the best interests of the child would be served by modification"].)

In this case, mother's petition stated that her requested change in the court's order would be better for A.S. because mother was now drug free, addressing the issues that led to A.S.'s removal, raising the sibling A.Z., and mother would like for the two brothers to be raised together by their mother. This is not a factual showing that providing mother a chance to reunify would promote A.S.'s best interests. Similarly, at the hearing mother made no factual showing that A.S.'s best interests would be served by providing mother with reunification services or unmonitored visitation. She produced no evidence of any bond between mother and child; indeed the evidence was uncontradicted that A.S. is "very bonded to the caregivers," and "refer[s] to them as Mommy and Daddy."

In effect, as in *J.C.*, mother is simply claiming it is in A.S.'s best interests to preserve the biological parent-child relationship. (*J.C., supra,* 226 Cal.App.4th at p. 527.) But as in *J.C.*, "[the child's] best interests are not to further delay permanency and stability in favor of rewarding Mother for her hard work and efforts to reunify." (*Ibid.*)

A.S. has lived his entire life with his prospective adoptive parents, and has never lived with his mother or any of his siblings. A.S. has had only sporadic visits from mother, who has offered no evidence of any bond between mother and child. As *J.C.* holds, "after reunification services have terminated, a parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*J.C., supra,* 226 Cal.App.4th at p. 527.) As in *J.C.*, mother's section 388 petition "fails to address these

points and therefore we conclude the court did not err in denying the petition." (*J.C.,* at p. 527.)

In sum, however successful mother's efforts to change her life have been – and the change is laudable – mother made no showing that A.S.'s best interests – his need for permanency and stability – would be served by giving her another chance to reunify with A.S. Plainly, the juvenile court did not abuse its discretion in denying mother's section 388 petition.

## DISPOSITION

The orders denying mother's section 388 petition and terminating mother's parental rights are affirmed.


GRIMES, J.

We concur:

BIGELOW, P. J.


FLIER, J.